



# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MARK W. DOBRONSKI,**
an individual,

                    Plaintiff,

v.

**JAMES CHRISTOPHER KELLY,**
an individual,
d/b/a **TRUSTY QUOTE INSURANCE
SERVICES,**
d/b/a **LEADZER;**

**JOEL VASQUEZ,**
an individual; and

**UNITED OF OMAHA LIFE
INSURANCE COMPANY,**
a Nebraska corporation;

                    Defendants.

Case: 2:23-cv-10257
Judge: Parker, Linda V.
MJ: Ivy, Curtis
Filed: 02-01-2023
CMP DOBRONSKI VS KELLY ET AL (DP)

---

## <u>COMPLAINT</u>

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria*

*persona*, and for his complaint against Defendants alleges:

1.  This matter arises under the Telephone Consumer Protection Act of 1991

("TCPA"), 47 U.S.C. § 227, *et seq.*, the Michigan Home Solicitation Sales Act

1

("MHSSA"), M.C.L. § 445.101, *et seq.*, and the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*

## Parties

2. Plaintiff is an individual, of the age of majority, a citizen of the United States of America, is a resident of and has a place of business in Orange County, Florida, has a residence and place of business in Washtenaw County, Michigan, and has a place of business in Wayne County, Michigan.

4. Upon information and belief, Defendant JAMES CHRISTOPHER KELLY ("Kelly") is an individual, of the age of majority, is mentally competent, is not in the military service, and resides at 10624 Eagle View Drive, Knoxville, Tennessee 37922.

5. Upon further information and belief, Defendant Kelly does business under the fictitious business name of TRUSTY QUOTE INSURANCE SERVICES ("Trusty"), which business name does not appear to be registered with state or county authorities.

6. Upon further information and belief, Defendant does business under the fictitious business name of LEADZER ("Leadzer"), which business name does not appear to be registered with state or county authorities.

7. Upon information and belief, Defendant JOEL VASQUEZ ("Vasquez") is

2

an individual, of the age of majority, is mentally competent, is not in the military service, and resides at 612 Grand Avenue, North Bergen, New Jersey 07047.

8. Upon information and belief, Defendant UNITED OF OMAHA LIFE INSURANCE COMPANY ("United") is a life and health insurer organized and existing under the laws of the state of Nebraska, with a principal office located at 3300 Mutual of Omaha Plaza, Omaha, Nebraska 68175, and is qualified to do business and does business in the state of Michigan as an insurance company, and has a registered office located at 2900 West Road, Suite 500, East Lansing, Michigan 48823-6386.

## Jurisdiction

9. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

10. This Court has limited personal jurisdiction over Defendants Kelly and Vasquez pursuant to M.C.L. § 600.705, as a result of the defendants transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; and/or contracting to insure any person, property, or risk located within this state at the time of contracting.

11. In addition, Defendants Kelly and Vasquez are each are licensed, pursuant to M.C.L. § 500.1201a, *et seq.*, by the MDIFS to act as insurance producers to sell,

solicit, and negotiate insurance in the state of Michigan.

12.   This Court has limited personal jurisdiction over Defendant Omaha pursuant to M.C.L. § 600.715, as a result of the defendant transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; and/or contracting to insure any person, property, or risk located within this state at the time of contracting.

13.   In addition, Defendant United is licensed, pursuant to M.C.L. § 500.402, *et seq.*, by the Michigan Department of Insurance and Financial Services ("MDIFS") to act as an insurer and to transact insurance in the state of Michigan.

## Venue

14.   Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received in this judicial district.

## The Telemarketing Laws

15.   In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent entities, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

16.   According to the Federal Communications Commission ("FCC"),

"Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls."

17. Congress explicitly found that robo-calling is an invasion of privacy.

18. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

19. According to YourMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during calendar year 2021 alone, American consumers were bombarded with over 50.5 *billion* robocalls; an average of over 150 robocalls to each man, woman, and child. [Source: www.robocallindex.com ].

20. In 2021, nearly 1 in 3 Americans say they have fallen victim to a phone

5

scam in the past year, with reported losses to phone scams exceeding $29.8 Billion. [Source: www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html ].

21. Plaintiff's telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God. Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

22. Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

23. As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

24. The TCPA, at 47 U.S.C. 227(b)(1), promulgates:

> "It shall be unlawful for any person within the United States, or any person outside the United States if the

6

recipient is within the United States—

(A)to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— ...

(iii)to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States...."

25. Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement and carry out the TCPA.

26. The TCPA implementing regulations, at 47 C.F.R. § 64.1200, promulgate in relevant part:

"(a) No person or entity may:

(1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice;...

(iii) To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call...

(2) Initiate, or cause to be initiated, any telephone call that

includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization..."

27. The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action, as follows:

"PRIVATE RIGHT OF ACTION. **A person or entity** may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –

(A) an action based on a violation of this **subsection or the regulations prescribed under this subsection** to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

28. Pursuant to Congressional mandate set forth at 47 U.S.C. § 227(c)(1), the FCC adopted regulations establishing a national "do not call" database and

prohibiting any person from making or transmitting a telephone solicitation to the

telephone number of any subscriber included in such database, which regulations are

set forth at 47 C.F.R. § 64.1200(c), and promulgate in relevant part:

> "No person or entity shall initiate any telephone solicitation to:...
>
> "(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government...."

29.  Additionally, the TCPA, at 47 U.S.C. § 227(c)(5), provides for a private

right of action, as follows:

> "Private right of action.  A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in **violation of the regulations prescribed under this subsection** may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages **for each such violation**, whichever is greater, or
>
> (C)  both such actions.
>
> It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and

procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

30. The TCPA proscriptions also are applicable to cellular or wireless telephone numbers, as set forth at 47 C.F.R. § 64.1200(e), which states:

"The rules set forth in paragraph (c) and (d) in this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers...."

31. The FCC has declared that telephone subscribers who have listed their wireless telephone number on the national do-not-call list are deemed to be "residential subscribers". <u>See</u> *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, 14039, ¶ 36 (2003).

32. The MHSSA, at M.C.L. § 445.111a(5), promulgates:

"... A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal [do-not-call] list."

33. The MHSSA, at M.C.L. 445.111b, promulgates:

"(1) At the beginning of a telephone solicitation, a person

10

> making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request. A natural person must be available to answer the telephone number at any time when telephone solicitations are being made...
>
> (3) A telephone solicitor shall not intentionally block or otherwise interfere with the caller ID function on the telephone of a residential telephone subscriber to whom a telephone solicitation is made so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber."

34. The MHSSA, at M.C.L. § 445.111c, provides for a private right of action and promulgates in relevant part as follows:

> "(1) It is an unfair or deceptive act or practice and a violation of this act for a telephone solicitor to do any of the following:...
>
> (f) Fail to comply with the requirements of section 1a or 1b.
>
> (2) ... [A] person who knowingly or intentionally violates this section is guilty of a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $500.00, or both.
>
> (3) A person who suffers loss as a result of violation of this section may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees."

35. The MTCCCA, at M.C.L. § 484.125, promulgates in relevant part as

11

follows:

> "(2) A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do either of the following: ...
>
> (a) Deliver a recorded message for the purpose of presenting commercial advertising to the subscriber, unless either of the following occurs:
>
> (i) The subscriber has knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller.
>
> (ii) The subscriber has knowingly and voluntarily provided his or her telephone number to the caller.
>
> (5) A subscriber contacted by a caller in violation of this section may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees...
>
> (9) A caller who violates this section is guilty of a misdemeanor, punishable by a fine of $1,000.00 or imprisonment for 10 days, or both."

36. Plaintiff's cellular telephone number is ***-***-9671.

37. Plaintiff's cellular telephone number ***-***-9671 is listed on the National Do Not Call Registry maintained by the FTC and has been continuously so listed since December 9, 2004 and at all times subsequent hereto.

38. By listing his residential telephone number ***-***-9671 on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including each and every one of the Defendants, that Plaintiff does not wish to receive

telephone solicitations or robocalls at his residential and/or cellular telephone numbers.

39. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations. *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969).

40. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the **non-subscriber customary user of a telephone number included in a family or business calling plan**." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26, ¶ 73 (FCC July 10, 2015) [Emphasis added].

41. Plaintiff is a customary user of the called telephone line, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's robocall provisions. See *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (C.A.3, 2015).

42. At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendant.

43.   At no time has Plaintiff or any other authorized person provided his cellular telephone number \*\*\*-\*\*\*-9671 to any of the Defendants.

44.   At no time has Plaintiff provided permission to the Defendant to engage in telephone solicitation with the Plaintiff via telephone.

45.   At no time has Plaintiff provided "prior express consent" or "prior express written consent" for any of the Defendants or anyone acting on behalf of the Defendants to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's cellular telephone number.

46.   The FCC has declared that purporting to receive consent during a call does not constitute the *prior* consent necessary to deliver the message in the first place, as the request is part of the telemarketing. See *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at \*49, ¶ 142 (June 26, 2003).

47.   Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

48.   The FCC has clarified that sellers may be held vicariously liable for

violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

49. When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason,* No. 10-10010, 2013 U.S. Dist. LEXIS 155985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participating in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D.MD. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

50. It is well settled under Michigan law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate,

regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

51. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

52. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

53. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

54. Each and every call placed without consent by Defendants alleged herein

to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

55. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

**<u>Allegations Specific to this Complaint</u>**

56. Defendant Kelly owns and operates his business, Trusty, as an insurance brokerage and engages insurance salespersons to market insurance products.

57. Trusty has an Internet website at <u>www.trustyquotes.com</u>.

58. Defendant Kelly owns and operates a second business, Leadzer, to provide telemarketing support and sales leads to insurances salespersons engaged in the marketing of insurance products.

59. Leadzer has an Internet website at <u>www.leadzer.io</u>.

60. Defendant Kelly's email address, as shown on his license registration with the MDIFS, is <u>jimmy@leadzer.io</u>.

61. Defendant Vasquez is an authorized agent of Defendant Kelly.

62. Defendant Kelly, through either Trusty and/or Leadzer, hires and

17

authorizes third-party telemarketers to make telephone solicitations to consumers seeking out consumers to purchase final expense life insurance policies.

63. Upon the third-party telemarketer identifying a prospect, the lead is live transferred first to Defendant Kelly and then referred to one of Defendant Kelly's agents to sell the consumer a final expense life insurance policy.

64. Defendants Kelly and Vasquez are licensed by Defendant Omaha to sell Omaha's life insurance products to consumers in, *inter alia*, Michigan.

65. Defendant Omaha is well aware that its licensed agents, like Defendants Kelly and Vasquez, are violating the TCPA when telephoning consumers, but Defendant Omaha willful blindness or conscious avoidiance by taking deliberate action to avoid learning about the illegal activity as the activities of its agents brings substantial dollar revenue to Defendant Omaaha.

66. Defendant Omaha has been sued numerous times in federal and state courts stemming from Omaha and its agents violating the TCPA, but has done little or nothing to curtail the illegal telemarketing as the illegal telemarketing continues.

67. Defendant Omaha is vicariously liable for the illegal telemarketing done by Defendants Kelly and Vasquez.

68. Defendants Kelly and Vasquez each had actual authority or apparent authority from Defendant Omaha to market Defendant Omaha's insurance products, including access to Defendant Omaha's computer systems to provide pricing and to

18

produce and submit applications for insurance, and email communications from Defendants were transmitted by Defendant Omaha using Defendant Omaha's computer system and including Defendant Omaha's branding.

69. Defendant Omaha ratifies the conduct of Defendants Kelly and Vasquez by accepting the applications for insurance submitted by Defendants Kelly and Vasquez.

<u>Call 1</u>

70. On January 23, 2023, at approximately 7:55 P.M., Defendants or Defendants' third-party telemarketer initiated a telephone call to Plaintiff's cellular telephone number ***-***-9671.

71. The caller identification number displayed was 734-464-1830.

72. Upon answering the telephone call, after Plaintiff said "hello", Plaintiff observed approximately 5 seconds of silence, then heard a "boink" sound, then heard a person identify himself as "Mark" with "Senior Benefits" calling about "a new, low cost, final expense program."

73. The lengthy silence followed by the "boink" sound are characteristics indicative of an automatic telephone dialing system being used.

74. "Mark" then asked Plaintiff a number of pre-qualifying questions.

75. To attempt to better identify the caller, Plaintiff engaged in an investigative

technique termed a "canary trap" by responding to the questions and providing false, but controlled, unique identifying information to the caller. If the controlled information reappears later, the originating source is able to be identified.

76. The call ended with the telemarketer stating that Plaintiff would be receiving information via U.S. Mail.

77. At no time during this call during Plaintiff provide his telephone number.

78. Immediately after termination of the call, Plaintiff dialed the caller identification number displayed (734-464-1830). The line merely rang and thend disconnected after 10 rings.

## Call 2

79. On January 24, 2023, at approximately 4:14 P.M., Defendants or Defendants' third-party telemarketer initiated a telephone call to Plaintiff's cellular telephone number \*\*\*-\*\*\*-9671.

80. The caller identification number displayed was 734-409-7637.

81. Upon answering the telephone call, after Plaintiff said "hello", Plaintiff observed approximately 5 seconds of silence, then heard a "boink" sound, then heard a person identify himself as "Joel" with "Senior Benefits" calling about "a new, low cost, final expense program."

82. The lengthy silence followed by the "boink" sound are characteristics

indicative of an automatic telephone dialing system being used.

83. "Joel" then asked Plaintiff a number of pre-qualifying questions.

84. To attempt to better identify the caller, Plaintiff engaged in an investigative technique termed a "canary trap" by responding to the questions and providing false, but controlled, unique identifying information to the caller. If the controlled information reappears later, the originating source is able to be identified.

85. "Joel" then stated that Plaintiff was qualified and attempted to live transfer the call to a "licensed agent in your state." After approximately 30 seconds, "Joel" stated that the licensed agents were all busy and that he would call back in 10 minutes.

86. Plaintiff clearly, and unambiguously, informed "Joel" to not call back.

87. At no time during this call did Plaintiff provide his telephone number.

88. Immediately after termination of the call, Plaintiff dialed the caller identification number displayed (734-409-7637). The line merely rang and was not answered after 10 rings.

<u>Call 3</u>

89. On January 24, 2023, at approximately 4:18 P.M., Defendants or Defendants' third-party telemarketer initiated a telephone call to Plaintiff's cellular telephone number ***-***-9671.

21

90. The caller identification number displayed was 986-206-2153.

91. Upon answering the telephone call, after Plaintiff said "hello", Plaintiff observed approximately 5 seconds of silence, then heard a "boink" sound, then heard a person identify himself as "Brian" the "licensed agent". "Brian" explained that his "associate" had just spoken to Plaintiff a couple minutes earlier but that the call got disconnected while being transferred to Brian, so Brian was calling back.

92. The lengthy silence followed by the "boink" sound are characteristics indicative of an automatic telephone dialing system being used.

93."Brian" then asked Plaintiff a number of pre-qualifying questions.

94. To attempt to better identify the caller, Plaintiff engaged in an investigative technique termed a "canary trap" by responding to the questions and providing false, but controlled, unique identifying information to the caller. If the controlled information reappears later, the originating source is able to be identified.

95. "Brian" then informed Plaintiff that Plaintiff was qualified for a $20,000.00 final expense life insurance policy issued by Security National Life with a monthly premium of $72.39.

96. Brian continued to take information from Plaintiff, including, *inter alia*, a controlled name, birth date, Social Security number, mailing address, email address, and bank account information.

22

97. Brian then advised that the licensed agent was busy and that the licensed agent would call in 5-10 minutes.

98. At no time during this call did Plaintiff provide his telephone number.

99. Immediately after termination of the call, Plaintiff dialed the caller identification number displayed (986-206-2153). The line is answered by a recording stating "your call is very important to us. Please wait for an available agent." The call then transfers to lively piano music for approximately 10 seconds and then hangs up.

## Call 4

100. On January 25, 2023, at approximately 6:46 P.M., Defendants or Defendants' third-party telemarketer initiated a telephone call to Plaintiff's cellular telephone number ***-***-9671.

101. The caller identification number displayed was 865-263-7582.

102. Upon answering the telephone call, the caller identified himself as Jimmy Kelly with Security National. Kelly stated that Plaintiff had spoken with Brian earlier.

103. Kelly stated that his agency was Trusty Quote.

104. Kelly stated that his partner, Joel, who "handles underwriting", will call the next day around 10:00 A.M.

105.  At no time during this call did Plaintiff provide his telephone number.

Call 5

106.  On January 25, 2023, at approximately 10:56 A.M., Defendants or Defendants' third-party telemarketer initiated a telephone call to Plaintiff's cellular telephone number ***-***-9671.

107.  The caller identification number displayed was 865-263-7583.

108.  Upon answering the telephone call, the caller identified himself as "Joel Vasquez... one of the managers at Trusty Quote", and that his National Producer Number was 19049365.

109.  Vasquez stated that he was following up on an application that Plaintiff allegedly had started with Fidar Lee (a name which Plaintiff has no record of speaking to) the day earlier.

110.  Vasquez made reference to the "canary trap" name and other controlled information which Plaintiff had provided to "Brian" during Call 3, *supra*.

111.  Vasquez stated that he is one of the managers that does the follow up interviews with Security National.

112.  Vasquez then confirmed that Plaintiff was looking for $10,000.00 of coverage; but, Plaintiff stated that "Brian" had quoted Plaintiff for $20,000.00 of coverage at a monthly premium of $72.39.

24

113. Vasquez then appeared to become confused and quickly terminated the telephone call, stating he would call back in 10 minutes.

114. At no time did during this call did Plaintiff provide his telephone number.

115. On January 25, 2023, at 11:36 A.M., after not hearing back from Vasquez for over a half hour, Plaintiff telephoned Vasquez at his business phone number shown on his MDIFS license detail (201-252-7133); Plaintiff received an answering machine and hung up without leaving a message.

## Call 6

116. On January 25, 2023, at approximately 11:39 A.M., Defendants or Defendants' third-party telemarketer initiated a telephone call to Plaintiff's cellular telephone number ***-***-9671.

117. The caller identification number displayed was 865-263-7583.

118. Upon answering the call, Plaintiff was speaking with Vasquez.

119. Vasquez explained that the quote that Plaintiff had previously received was completely wrong, and that Vasquez was trying to reach out to his managing partner to figure out what to do.

120. Vasquez clarified that the managing partner he was referencing was Kelly.

## Call 7

121.  On January 25, 2023, at approximately 6:46 P.M., Defendants or Defendants' third-party telemarketer initiated a telephone call to Plaintiff's cellular telephone number ***-***-9671.

122.  Upon answering the call, Plaintiff was speaking with Vasquez.

123.  Vasquez explained that the quote that Plaintiff had previously received was completely wrong, and that the pricing that Brian had provided was completely wrong.  Instead, Vasquez had now qualified Plaintiff for a $20,000 life insurance policy with Omaha.

124.  Vasquez stated that he would complete the application form and send the application form to Plaintiff via email.

125.  Vasquez stated that Plaintiff would be hearing either directly from Vasquez or from Kelly.

126.  On January 26, 2023, at 3:08 P.M., Plaintiff received an email from Defendant Kelly which included a United individual life insurance application with the "canary trap" information previously provided by Plaintiff to "Brian" during Call 3 to appear on the application form.

Call 8

127.  On January 27, 2023, at approximately 5:33 P.M., Defendants or Defendants' third-party telemarketer initiated a telephone call to Plaintiff's cellular

26

telephone number \*\*\*-\*\*\*-9671.

128. The caller identification number displayed was 734-330-2541.

129. Upon answering the telephone call, after Plaintiff said "hello", Plaintiff observed approximately 7 seconds of silence, then heard a "boink" sound, then heard what appeared to be a pre-recorded message of a person stating "My name is Kevin Foster, I am with Senior Benefits. How are you today?"

130. The recorded message then prompted Plaintiff to state his age and then to identify a favorite hobby.

131. When Plaintiff responded, the call suddenly terminated.

132. Immediately after termination of the call, Plaintiff dialed the caller identification number displayed (734-330-2541). The line rings for 5 rings and then reverts to a reorder signal.

<u>Confrontation Call</u>

133. On January 28, 2023, as part of his investigation, Plaintiff telephoned Defendant Kelly and professed confusion over the recent application process experience. During the call, Kelly stated that he was the owner of Trusty and Leadzer.

134. Plaintiff expressed frustration to Kelly over the number of calls which Kelly receives from telemarketers identifying themselves as "Senior Benefits". Kelly

stated that those telemarketers were his agents who work in his call center and that they identify by "Senior Benefits" because they want to use a generic name since they market for multiple insurance agents and insurance companies.  Kelly informed Plaintiff that, now that Plaintiff had purchased an insurance policy through Kelly, Kelly would arrange for the telemarketing calls to stop.

135.    Over the past several months, Plaintiff has received dozens of telemarketing calls from telemarketers identifying themselves as being with "Senior Benefits" which Plaintiff reasonably believes may be the same telemarketers involved with the calls in this lawsuit which Plaintiff intends to establish during the course of discovery.  After discovery, Plaintiff anticipates amended this complaint to include damages stemming from one or more of those additional telemarketing calls.

## COUNT I
## VIOLATION OF THE TCPA - ROBOCALL

136.  Plaintiff incorporates the allegations of paragraphs 1 through 135, *supra.*

137.  Calls 1, 2, 3, and 8 each were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(1)(iii), as Defendants or Defendants' agents initiated a telephone call, when there was no emergency purpose and without the prior express consent of the called party using an automatic telephone dialing system or an artificial or prereocrd voice to Plaintiff's cellular telephone number.

138.  The aforesaid violations of the TCPA were wilful and/or knowing as is

evidenced by the repeated number of calls.

## COUNT II
## VIOLATION OF THE TCPA -TELEMARKETING ROBOCALL

139. Plaintiff incorporates the allegations of paragraphs 1 through 135, *supra*.

140. Call 1, 2, 3, and 8 were each in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(2), as Defendants or Defendants' agents initiated a telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice to Plaintiff's cellular telephone number without the prior express written consent of the called party.

141. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT III
## VIOLATION OF THE TCPA - ABANDONED CALL

142. Plaintiff incorporates the allegations of paragraphs 1 through 135, *supra*.

143. Calls 1, 2, 3,and 8 were each were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7), as the call was not connected to a live sales representative within two (2) seconds of the Plaintiff's completed greeting upon answering the telephone call.

144. The aforesaid violations of the TCPA were wilful and/or knowing as is

evidenced by the repeated number of calls.

## COUNT IV
### VIOLATION OF THE TCPA - FAILURE TO IDENTIFY

145. Plaintiff incorporates the allegations of paragraphs 1 through 135, *supra.*

146. Calls 1, 2, 3, and 8 each were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(4) and/or 47 C.F.R. 64.1200(b)(1), as Defendants or Defendants' agents failed to provide the called party with the name of the person or entity on whose behalf the call was being made.

147. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT V
### VIOLATION OF THE TCPA - DO NOT CALL

148. Plaintiff incorporates the allegations of paragraphs 1 through 133, *supra.*

149. Calls 1, 2, 3, 4, 5, 6, 7 and 8 each were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(c)(2), as Defendants or Defendants' agent initiated a telephone solicitation to a residential telephone subscriber who has registered his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

150. The aforesaid violations of the TCPA were wilful and/or knowing as is

evidenced by the repeated number of calls.

## COUNT VI
## VIOLATION OF THE TCPA - NO DO NOT CALL POLICY

151. Plaintiff incorporates the allegations of paragraphs 1 through 135, *supra*.

152. Calls 1, 2, 3, 4, 5, 6, 7 and 8 each were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d), as Defendants or Defendants' agent initiated calls for telemarketing purposes without having instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

153. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT VII
## VIOLATION OF THE TCPA - FALSIFIED CALLER ID

154. Plaintiff incorporates the allegations of paragraphs 1 through 135, *supra*.

155. Calls 1, 2, 3, and 8 each were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1601(e)(1), as Defendants or Defendants' agents failed to provide caller identification information displaying a telephone number which would permit any individual to make a do-not-call request during regular business hours; and, additionally, the caller identification information did not include the name of the telemarketer or the seller on whose behalf the telemarketing

call was placed.

156. The Defendants took deliberate and overt action to manipulate the telephone network equipment to provide false caller identification information, therefore the aforesaid violation of the TCPA was wilful and/or knowing.

## COUNT VIII
## VIOLATION OF THE MHSSA

157. Plaintiff incorporates the allegations of paragraphs 1 through 135, *supra.*

158. Each of Calls 1, 2, 3, 4, 5, 6, 7 and 8 were in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendants or Defendants' agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list; and/or M.C.L. § 445.111b(1), Defendants or Defendants; agent did not, at the beginning or the telephone solicitation, state the full name of the organization on whose behalf the call was initiated; and/or M.C.L. § 445.111b(3), Defendants or Defendants' agent intentionally blocked or otherwise interfered with the caller ID function on the telephone.

## COUNT IX
## VIOLATION OF THE MTCCCA

159. Plaintiff incorporates the allegations of paragraphs 1 through 135, *supra.*

160. Call 8 was in violation of the MHSSA, specifically M.C.L. § 445.111a(5),

as Defendants or Defendants' agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list; and/or M.C.L. 445.111b(1), Defendants or Defendants; agent did not, at the beginning or the telephone solicitation, state the full name of the organization on whose behalf the call was initiated; and/or M.C.L. 445.111b(3), Defendants or Defendants' agent intentionally blocked or otherwise interfered with the caller ID function on the telephone.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendants, jointly and severally, as follows:

A.    Damages:

i. Count I: For violations of the TCPA, a total of 4 violations at $500.00 per violation, for damages of $2,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $6,000.00.

ii. Count II: For violations of the TCPA, a total of 4 violations at $500.00 per violation, for damages of $2,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $6,000.00.

iii. Count III: For violations of the TCPA, a total of 4 violations at

33

$500.00 per violation, for damages of $2,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $6,000.00.

iv.  Count IV: For violations of the TCPA, a total of 4 violations at $500.00 per violation, for damages of $2,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $6,000.00.

v.  Count V: For violations of the TCPA, a total of 8 violations at $500.00 per violation, for damages of $4,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $12,000.00.

vi.  Count VI: For violations of the TCPA, a total of 8 violations at $500.00 per violation, for damages of $4,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $12,000.00.

vii.  Count VII: For violations of the TCPA, a total of 4 violations at $500.00 per violation, for damages of $2,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $6,000.00.

viii.  Count VIII: For violations of the MHSSA, 8 violations at $250.00 per violation, for total damages of $2,000.00.

ix.  Count IX: For violations of the MTCCCA, 9 violations at $1,000.00 per violation, for total damages of $9,000.00.

The cumulative total amount of damages claimed in this action is $65,000.00,and in

the event of default judgment is the sum certain damages amount that will be sought.

B. An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C. An injunction enjoining Defendants from initiating any telephone calls to Plaintiff's telephone lines.

D. Interest accruing from the date of filing until paid at the statutory rate; and,

E. Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: January 30, 2023

_____
Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

County in which action arose: __Washtenaw, MI__

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MARK W. DOBRONSKI

**DEFENDANTS**

JAMES CHRISTOPHER KELLY
d/b/a TRUSTY QUOTE INSURANCE SERVICES, d/b/a LEADZER;
JOEL VASQUEZ; and, UNITED OF OMAHA LIFE INSURANCE COMPANY

**(b)** County of Residence of First Listed Plaintiff    Orange, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Knox, TN
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

PRO SE

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. 227

Brief description of cause:
Illegal telemarketing calls

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 65,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
January 30, 2023

SIGNATURE OF ATTORNEY OF RECORD
*Mark W. Dobronski*

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?     ☐ Yes  ■ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.        Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)     ☐ Yes  ■ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :

PRESS FIRMLY TO SEAL

 

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED



**UNITED S...**
**POSTAL SE...**

- Expected delivery date specif...
- Most domestic shipments inc...
- USPS Tracking® included for...
- Limited international insuranc...
- When used internationally, a...

*Insurance does not cover certain item...
Domestic Mail Manual at *http://pe.usp...*
** See International Mail Manual at *htt...*

# FLAT RATE EN...
ONE RATE ■ ANY WEIGHT...

# TRACKED ■ IN...


PS00001000014

EP14F May 2020
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP


**UNITED STATES**
**POSTAL SERVICE.**

**P**    *Retail*

US POSTAGE PAID
**$9.65**    Origin: 48130
01/30/23
2525100130-09

**PRIORITY MAIL®**

0 Lb 8.40 Oz    **RDC 22**

EXPECTED DELIVERY DAY: 01/31/23    **C052**

SHIP
TO:    231 W LAFAYETTE BLVD
FL 5TH
DETROIT MI 48226-2777


USPS TRACKING® #

9505 5123 0462 3030 9916 25

FROM:

MARK W DOBRONSKI
PO BOX 85547
WESTLAND, MI 48185-0547



TO:

UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700



This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service, May 2020; All rights reserved.